**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**GLADYS MCKNIGHT,**

        **Plaintiff,**           **CIVIL ACTION NO. 11-cv-15549**

   **vs.**

                      **DISTRICT JUDGE MARIANNE O. BATTANI**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Gladys McKnight seeks judicial review of Defendant the Commissioner of Social Security's determination that she is not entitled to social security disability benefits for her physical impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 10) and Defendant's Motion for Summary Judgment (docket no. 12).  The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 3.)  The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

**I.**      **RECOMMENDATION:**

This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 11) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 14) be GRANTED.

**II.**     **PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of June 29, 2009 alleging that she had been disabled since December 19, 2000,[1] due to leg swelling, thyroid disorder, hypertension, and diabetes.  (TR 11, 13, 37.)  The Social Security Administration denied benefits.  (TR 37.)  Plaintiff requested a *de novo* hearing, which was held on October 6, 2010, before Administrative Law Judge (ALJ) Andrew G. Sloss, who subsequently found that the claimant was not entitled to Disability Insurance Benefits because Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months.  (TR 11, 13.)  The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced the instant action for judicial review.  Plaintiff and Defendant each filed their Motions for Summary Judgment.

## III.   PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

### A.      Plaintiff's Testimony

Plaintiff was 53 years old at the time of the administrative hearing and 44 years old at the time of alleged onset.  (*See* TR 26.)  Plaintiff has past work experience in a laminating shop and as a home healthcare worker.  (TR 114.)  Plaintiff testified that she hasn't worked since January 1, 2002, because her legs swell up, and she has to lay down to keep her feet elevated because she has open sores on her legs.  (TR 26-27.)  She testified that she thinks the problem is caused by her thyroid.  (TR 27.)  At the time of the hearing, Plaintiff had no source of income except for her husband's income.  (TR 26.)  She testified that she does not do any household chores or cooking, and she does not go shopping, visit friends, or go to church; she generally spends the day with her feet elevated watching TV.  (TR 27-28.)  This has been the case "on and off" since 2000.  (TR 28.)

---

[1]Plaintiff later amended her disability onset date to January 1, 2002.  (TR 26.)

Plaintiff testified that she has a driver's license, but she does not drive; her husband handles all of the daily chores and shopping. (TR 26-27.)

Plaintiff testified that she takes "lots of [medications]" for her ailments, she has a wound nurse that comes to her home, and she drives a prescribed electric cart. (TR 27.) In 2008, before her electric cart was prescribed, Plaintiff had chairs located throughout her house so that she could sit down as she ambulated. (TR 28.) Plaintiff testified that she had the chairs located throughout her home before December 2005. (TR 28-29.) She also testified that she had problems with swelling before December 2005. (TR 29.)

Plaintiff testified that she tried to see her treating physician, Dr. Keterpaul, regularly, but she had problems with health insurance and finances, which caused gaps in her treatment. (TR 29.) She also testified that her lack of health insurance caused her to be "non compliant" with her prescribed treatment. (TR 29.)

### B.    Medical Record

While Plaintiff provided Defendant with over 100 pages of medical records, only a single record was dated before December 31, 2005, her date last insured. (TR 184-314.) On January 20, 2004, Plaintiff presented to Saint Mary's Hospital after falling on the ice at her home. (TR 187.) The Admission Report indicates that she walked into the hospital. (TR 187.) She complained of elbow pain and told the hospital that she had hypothyroidism, glaucoma, and high cholesterol. (TR 188.) She indicated that the pain was moving to her wrist and that she had struck her head on the snow. (TR 188.) Her physical exam found that her "[s]kin [was] normal to inspection . . . without masses or raised lesions." (TR 189.) She did not indicate that she had any pain in her legs or trouble walking. (*See* TR 187-198.)

In March 2006, Plaintiff began seeing Dr. Minoo Kheterpal for hypothyrodism and diabetes.

3

(TR 202-03.)  Dr. Kheterpal noted that Plaintiff saw him from March 2006 through March 2007, but she did not see him again until 2008.  (TR 202.)  In March 2008 and November 2008, Plaintiff reported to the hospital with ailments related to her hypothyroidism, but she did not report any pain in her legs or difficulty walking.  (TR 271-75, 280.)  In Spring 2009, Plaintiff reported with wounds and swelling on her legs.  (TR 259.)  Dr. Kheterpal opined that Plaintiff was not complying with her leg treatment.  (TR 203, 287.)

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the disability insured status requirements through December 31, 2005; had not engaged in substantial gainful activity since January 1, 2002; and suffered from thyroid disorder, hypertension, and diabetes.  (TR 13.)  Nevertheless, the ALJ found that while "[Plaintiff's] medically determinable impairments could have been reasonably expected to produce the alleged symptoms," her statements regarding the extent of her symptoms were not credible (TR 13).  Thus, the ALJ found that Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months.  (TR 13.)  Therefore, she was not suffering from a disability under the Social Security Act at any time from January 1, 2002, through December 31, 2005.  (TR 15.)

## V.   LAW AND ANALYSIS

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it

is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work,

5

the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.   Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility, which caused the ALJ to inaccurately portray Plaintiff's limitations

to the Vocational Expert (VE).   (Docket no. 10 at 6-9.)   Defendant responds that the ALJ appropriately found that Plaintiff's statements were not credible and that the ALJ's questions to the VE need not be considered because the ALJ found that Plaintiff was not disabled at step two; thus, the VE's testimony was not applied in the ALJ's decision.  (Docket no. 12 at 21.)  The Court agrees with Defendant.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997).  But Credibility assessments are not insulated from judicial review.  Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence.  *Id.*  An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.*  "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2).  The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of

claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain.  *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

In finding that Plaintiff's statements were not credible, the ALJ noted that Plaintiff claimed at her hearing and on one application that she was unable to do housework, go shopping, or go to church, but she "stated in [another] application that she walks to the mailbox, goes for car rides, and cleans the house and does laundry."  (TR 14.)   The ALJ also discussed that "[i]n terms of [Plaintiff's] physical impairments, there is a lack of medical evidence to suggest that [her disorders] significantly limit [her] ability to perform work related activities prior to the date last insured."  (TR 15.)  The ALJ looked at Plaintiff's January 2004 hospital visit for elbow pain and recognized that her physical examination was normal.  (TR 15.)

The Court finds no reason to set aside the ALJ's determination of Plaintiff's credibility. Moreover, to the extent that Plaintiff argues that the ALJ's hypothetical to the VE was inappropriate, such a hypothetical only applies at step 5 of the Framework.  And where an ALJ finds that a plaintiff was not disabled at step 2 of the framework, he need not proceed to step 5.  *Rabbers v. Comm'r*, 582 F.3d 647, 652 (6th Cir. 2009).

Additionally, Although Plaintiff does not directly question the ALJ's determination at step 2, the Court finds that the ALJ's decision is based on substantial evidence.  Plaintiff had the burden of proving that her physical impairments limited her ability to perform basic work activities.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 152 (1987).  Plaintiff provided no objective evidence to suggest that she had any significant limitations before December 31, 2005.  To the contrary, Plaintiff's

8

January 2004 hospital records indicate that she walked into the hospital and had no skin problems. (TR 187-89.)  Moreover, her records from after December 31, 2005, indicate that she first saw Dr. Kheterpal in March 2006 and that her leg swelling and wound problems did not start until sometime in 2009.  (TR 202, 259.)

## VI.    CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (docket no. 10) should DENIED, and Defendant's Motion for Summary Judgment (docket no. 12) should be GRANTED.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.


Dated: February 7, 2013         s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

        I hereby certify that a copy of this Report and Recommendation was served upon Counsel
of Record on this date.

Dated: February 7, 2013         s/ Lisa C. Bartlett
                                Case Manager


10